1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHELLE M. NAULT,                                2:19-cv-00038-GMN-CLB

                            Plaintiff,

    v.

ANDREW SAUL[1],                                  **REPORT AND RECOMMENDATION**
Acting Commissioner of Social Security,          **OF U.S. MAGISTRATE JUDGE[2]**

                            Defendant.

    This case involves the judicial review of an administrative action by the
Commissioner of Social Security ("Commissioner") denying Michelle Nault's ("Nault")
application for disability insurance benefits pursuant to Title II of the Social Security Act.
Currently pending before the Court is Nault's motion for reversal or remand. (ECF No. 21.)
In this motion, Nault seeks the reversal of the administrative decision and remand for an
award of benefits.  (*Id.*)  The Commissioner filed a response and cross-motion to affirm
(ECF No. 24/25), and Nault filed a reply (ECF No. 26).  For the reasons set forth herein,
the Court recommends that Nault's motion for remand, (ECF No. 21), be granted, and the
Commissioner's cross-motion to affirm, (ECF No. 24), be denied.

**I.     STANDARDS OF REVIEW**

    A.    Judicial Standard of Review

    This Court's review of administrative decisions in social security disability benefits
cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854
(9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of

---

[1]    Andrew Saul is now the Commissioner of Social Security and is automatically
substituted as a party pursuant to Fed. R. Civ. P. 25(d).
[2]    This Report and Recommendation is made to the Honorable Gloria M. Navarro,
United States District Judge.  The action was referred to the undersigned Magistrate Judge
pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B.    Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in

accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

A.    Procedural History

Nault applied for disability insurance benefits ("DIB") on March 7, 2013 with an alleged disability onset date of March 1, 2013.  (Administrative Record ("AR") 337-41.) The application was denied initially (AR 260-63), and upon reconsideration (AR 267-70). Nault subsequently requested an administrative hearing.  (AR 275-76.)

On February 27, 2015 Nault and her attorney appeared at a hearing before an Administrative Law Judge ("ALJ").  (AR 186-99.)  A vocational expert ("VE"), also appeared

1  at the hearing. (*Id.*) The ALJ issued a written decision on May 19, 2015, finding that Nault

2  was not disabled because she could perform past relevant work. (AR 234-42.) Nault

3  appealed, and the Appeals Council denied review on October 31, 2018. (AR 1-8.)

4  Accordingly, the ALJ's decision became the final decision of the Commissioner. Having

5  exhausted all administrative remedies, Nault filed a complaint for judicial review on

6  January 10, 2019. (ECF No. 3.)

7       B.    <u>ALJ's Decision</u>

8       In the written decision, the ALJ followed the five-step sequential evaluation process

9  set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 234-42.) Ultimately, the ALJ

10  disagreed that Nault had been disabled from March 1, 2013, the date the application was

11  filed. (*Id.* at 242.) The ALJ held that, based on Nault's RFC she could perform past relevant

12  work as generally performed in the national economy. (*Id.* at 241-42.)

13       In making this determination, the ALJ started at step one. Here, the ALJ found Nault

14  had not engaged in substantial gainful activity since the alleged onset date of March 1,

15  2013. (*Id.* at 236.) At step two, the ALJ found Nault had the following severe impairment:

16  chronic back pain. (*Id.*) At step three, the ALJ found Nault did not have an impairment or

17  combination of impairments that either met or medically equaled the severity of those

18  impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d),

19  404.1525, and 404.1526. (*Id.* at 238.)

20       Next, the ALJ determined Nault had an RFC to perform a full range of sedentary

21  work as defined by 20 C.F.R. § 404.1567(a). (*Id.*) The ALJ found Nault's impairments

22  could reasonably be expected to cause some of the symptoms alleged, but that her

23  statements regarding the intensity, persistence, and limiting effects of those symptoms

24  were not entirely credible. (*Id.* at 240.) In reaching this conclusion, the ALJ reviewed and

25  discussed the objective medical evidence, medical opinions, and factors weighing against

26  Nault's credibility. (*Id.* at 238-41.) The ALJ then determined that Nault was capable of

27  performing past relevant work as a telephone operator, which did not require the

28  performance of work-related activities precluded by her RFC. (*Id.* at 241-42.) Accordingly,

1    the ALJ held that Nault had not been under a disability since March 1, 2013 and denied

2    her claim. (*Id.* at 242.)

3    **III.    ISSUES**

4          Nault seeks judicial review of the Commissioner's final decision denying her DIB

5    Title II of the Social Security Act.  (ECF No. 21.)  Nault raises the following issues for this

6    Court's review:

7          1.    Whether the ALJ erred in finding Nault's mental impairments non-severe;

8          2.    Whether the ALJ improperly rejected medical opinion evidence;

9          3.    Whether the ALJ improperly rejected Nault's testimony; and

10         4.    Whether the ALJ improperly rejected the lay witness testimony.

11   **IV.    DISCUSSION**

12         A.    <u>The ALJ Failed to Adequately Develop the Record as to Nault's Alleged
               Mental Impairments</u>

13

14         Nault argues that the ALJ erred in failing to find her mental impairments severe,

15   although throughout the record it shows Nault was treated for bipolar disorder and anxiety.

16   (ECF No. 21 at 8; *See also* AR 592-608, 609-16, 617-36, 683-84.)  Nault asserts that the

17   ALJ erred by failing to fully develop the record as to her mental impairments because the

18   ALJ did not make every reasonable effort to obtain statements from Nault's treating

19   sources as to how her mental impairments affect her ability to work and/or by ordering a

20   psychological consultative examination if the treating sources were unable to provide the

21   information.  (ECF No. 21 at 8-9.)

22         To satisfy step two's requirement of a severe impairment, the claimant must prove

23   the physical or mental impairment by providing medical evidence consisting of signs,

24   symptoms, and laboratory findings; the claimant's own statement of symptoms alone will

25   not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908.  "A determination that an impairment(s)

26   is not severe requires a careful evaluation of the medical findings which describe the

27   impairment(s) and an informed judgment about its (their) limiting effects on the individual's

28   physical and mental ability(ies) to perform basic work activities; thus, an assessment of

function is inherent in the medical evaluation process itself." SSR 85-28, 1985 WL 56856 at 4 (1985) (Program Policy Statement; Titles II and XVI: Medical Impairments That Are Not Severe.)  The step-two inquiry is a de minimis screening device used to dispose of groundless claims. *See Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987); *see also Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).  "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits." *Bowen,* 482 U.S. at 148.

In evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  First, the ALJ evaluates a claimant's "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant "has a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see also* 20 C.F.R. §§ 404.1508, 416.908.  The ALJ must also "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

Rating the degree of functional limitation is a highly individualized process that requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's impairment interferes with their "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The ALJ uses a point scale to rate four broad functional areas (activities of daily living, social functioning, a concentration category, and episodes of decompensation) and the degree to which the claimant's impairment interferes with each broad functional area. (*Id.*); *see also Hoopai v. Astrue,* 499 F.3d 1071, 1077-78 (9th Cir. 2007) ("[T]he ALJ is required to rate the degree of functional limitations in four areas . . . The ALJ clearly met this requirement by rating and assessing [claimant's] limitations in each of these four functional areas.  The ALJ was not required to make any more specific findings of the claimant's functional limitations.")

The ALJ found Nault's medically determinable mental impairments of bipolar disorder and anxiety, considered singly and in combination, did not cause more than minimal limitation in her ability to perform basic mental work activities and were therefore non-severe. (AR 237.) The ALJ then considered the four broad areas of mental functioning as set out in the disability regulations for evaluating mental disorders and the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), known as the "paragraph B" criteria. (*Id.*)

The ALJ found Nault had mild limitations in the first functional area of activities of daily living. (AR 237.) The ALJ's opinion was based on the very limited testimony provided by Nault at the hearing. (*Id.*; *see also* AR 186-199.) The ALJ found that Nault had mild limitations in the second functional area of social functioning. (AR 237.) Specifically, the ALJ relied on a function report submitted by Nault (AR 378-385) and a function report submitted by a lay witness (AR 428-435) (AR 237.) The ALJ found that Nault had mild limitation in the third functional area of concentration, persistence, or pace (AR 237.) Here, the ALJ relied again on a function report submitted by Nault (AR 378-385) and an internal medicine consultative examination by Dr. Mumford (AR 512-518) (AR 237). Finally, as to the fourth functional area, the ALJ found no episodes of decompensation. (AR 237.) Accordingly, because the ALJ determined Nault's medically  determinable mental impairments caused no more than mild limitation in any of the first three functional areas and there were no episodes of decompensation, Nault's medically determinable mental impairments were considered non-severe. (AR 237.)

Noticeably absent from the ALJ's findings are any reference to the treatment notes of Dr. Zedek or Dr. Baig. However, the record shows that Nault began treatment with Dr. Ron Zedek for bipolar disorder in May of 2013. (AR 592-636.) Nault continued to receive treatment with Dr. Zedek, including monthly treatment through medication, through at least October of 2014. (*Id.*) In January and February of 2015, Nault was treated by Dr. Saleha Baig for symptoms of bipolar disorder, obsessive compulsive disorder, and anxiety disorder. (AR 683-87.) Dr. Baig noted Nault presented as anxious and irritable, with a

constricted affect.  (*Id.*)  Nault was prescribed multiple medications to treat her mental disorders.  (AR 592-636, 683-87.)  Nault's other medical providers repeatedly noted diagnoses for anxiety and bipolar disorder in their treatment notes, (*See* AR 506-510, 519-545, 546-584, 637-674), and on at least one occasion actually provided Nault with prescriptions to treat her mental health disorders.  (*See* AR 519-523.)  Further, Nault testified at the hearing that she had angry outbursts related to her mental illness and had thrown objects at her husband's head.  (AR 191.)  Nault's husband submitted lay witness statements asserting Nault's mood swings and difficulty getting along with others affected her ability to perform work activity. (AR 420-27.)  Finally, there are no statements from Nault's treating sources, Dr. Zedek and Dr. Baig, as to how Nault's mental impairments would affect her ability to work. If they were unable to provide that information, it appears the ALJ did not order a psychological consultative examination to explore the impact of Nault's bipolar disorder and anxiety on her ability to work.

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  This duty extends to the represented as well as to the unrepresented claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978). In this case, Nault was represented by a lay person, rather than an attorney. The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir.1992). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen,* 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir.1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the

1
2

hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir.1998); *Smolen,* 80 F.3d at 1288.

3
4
5
6
7
8
9
10

Here, the Court finds the ALJ failed to "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document [the] findings," 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1), as no mention is made to any of the treatment notes of Dr. Zedek or Dr. Baig related to Nault's bipolar disorder and anxiety.  Further, because neither treating physician submitted statements related to the effect of Nault's mental impairments on her ability to work, the record was inadequate.  Therefore, due to the inadequacies of the record as to Nault's mental impairments, the ALJ had a duty to fully develop the record, which he failed to do.

11
12
13

Accordingly, the Court finds the ALJ erred at step two by failing to document findings related to Nault's mental impairments and by also failing to fully develop the record as to Nault's mental impairments.

14

B.    Harmless Error

15
16
17
18
19
20
21
22
23

Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the court must exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Only where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination is the ALJ's error is harmless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

24
25
26
27

The reversible errors in the ALJ's step two determination are not harmless.  For the reasons stated above, the Court cannot conclude that no reasonable ALJ would have reached a different determination because of the ambiguities in the ALJ's opinion.  Therefore, the Court finds the reversible errors are not harmless.

28

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.    Remand for Further Proceedings

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987); *Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985); *see also Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (amended Feb. 5, 2016) ("The only issue on appeal is whether the district court abused its discretion in remanding for further proceedings instead of remanding for benefits."); *Terry v. Sullivan,* 903 F.2d 1273, 1280 (9th Cir. 1990) (noting that the court has the "discretion to remand so that the Secretary may further develop the record").

Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014 (discussing *Garrison v. Colvin,* 759 F.3d 995 (9th Cir. 2014)).  The district court must first determine that the ALJ made a legal error, such as failing to provide sufficient reasons for rejecting evidence. *Id.*  If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities and "all essential factual issues have been resolved." *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1001 (9th Cir. 2014). *Dominguez, 808 F.3d at 407* (concluding that the district court did not err in remanding the case for further factual proceedings, rather than payment of benefits, where there were inconsistencies, conflicts, and gaps in the record that required further administrative proceedings.

As noted above, the ALJ failed to fully develop the record as to Nault's mental impairments. Because there are outstanding issues that must be resolved before a final disability determination can be made, it is appropriate to remand this case for further proceedings with respect to Nault's mental impairments. *Treichler*, 775 F.3d at 1105.

D.    Other Arguments Raised by Nault

Because the Court recommends remand of this case for further development of the administrative record as to Nault's mental impairments, the Court will not address Nault's other arguments relating to the medical opinion testimony, Nault's testimony, or lay

witness testimony.  However, these issues should be more fully addressed in the ALJ's opinion on remand.

**V.    CONCLUSION**

Based on the foregoing, the Court recommends that Nault's motion to remand (ECF No. 21) be granted, and the Commissioner's cross-motion to affirm (ECF No. 24) be denied.

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**VI.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Nault's motion for remand (ECF No. 21) be **GRANTED**, and the Commissioner's cross-motion to affirm (ECF No. 24) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that this case be **REMANDED** for further proceedings as specified above.

**DATED**: January 30, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**